UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No. 05-74493 |
| | : | |
| BRADLEY T. SMITH | : | Chapter 13 |
| | : | |
| Debtor(s) | : | Judge:  John E. Hoffman Jr. |

**CREDITOR SECURITIES AND EXCHANGE COMMISSION'S
REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS OR CONVERT
BRADLEY T. SMITH'S CHAPTER 13 CASE**

Creditor U.S. Securities and Exchange Commission ("SEC" or "Commission") files this Reply to Debtor Bradley T. Smith's response to the SEC's Motion to Dismiss or Convert Debtor's Chapter 13 Case.[1] The Debtor's Response fails utterly, as it ignores key portions of the factual record, fails to respond to key arguments and cases set forth in the SEC's brief, and fundamentally misconstrues the Bankruptcy Code and the relevant case law.

1. **Debtor Ignores the Record in the SEC Enforcement Action.**

Remarkably, the Debtor's Response ignores the fact (raised by the SEC in its opening brief) that on September 20, 2005, *three weeks prior* to the October 14, 2005 petition date (the "Petition Date"), the Debtor had already filed a proposed joint final pretrial order concerning remedies in which Debtor did not dispute the amount of disgorgement that Debtor owed to the SEC, based on the district court's *pre-petition* summary judgment ruling finding the Debtor liable for fraud.  (See Ex. F to SEC initial brief.)  As set forth at page 3 of the SEC's memorandum of law, this undisputed disgorgement amount (as reflected in the proposed joint final pretrial order filed by the parties) was in excess of $2 million, far in excess of the $307,000

---

[1]  The SEC received a copy of the Debtor's Reply brief by U.S. mail on March 10, 2006.  The Debtor's attorney is not listed as an electronic filer, and he did not file the Reply electronically.  The due date for this Reply is thus March 17, 2006, ten days from the date the SEC received Debtor's Reply.

limit for unsecured noncontingent, liquidated debts under Chapter 13. Instead of acknowledging this dispositive filing, the Debtor focuses his Response entirely on subsequent filings that merely reduced this undisputed disgorgement amount to a final judgment.

The Debtor cannot simply wish away inconvenient facts or engage in selective inclusion of the record in the SEC's enforcement action. The simple and uncontestable truth is that the disgorgement amount, which is based on the actual amount of funds raised in Smith's fraudulent offerings, was both readily ascertainable and not in dispute at the time of the Petition Date. As of that date, the Debtor had already been found liable for fraud by the district court and had already filed a proposed joint final pretrial order in which he acknowledged and did not dispute the disgorgement amount of $2,095,517. Further proof that these amounts were not in dispute is reflected in both the stipulation of the parties and the final judgment, both of which incorporated the exact same disgorgement amounts that the SEC and the Debtor had set forth in the proposed final pretrial order.

In his the Response, the Debtor places great reliance on the fact that a remedies hearing was still scheduled as of the Petition Date. This remedies hearing was intended to resolve *all* issues relating to *all* remedies, including disgorgement, civil penalties, prejudgment interest and injunctive relief. That there may have been other issues still reasonably in dispute as of the Petition Date, such as the amount of civil penalties or the type of injunction, if any, to be entered against the defendants in the district court action, is irrelevant to this proceeding. What is relevant here is that as of the Petition Date the parties had agreed as to the disgorgement amount that flowed from the court's fraud finding.

### 2. Debtor's Arguments Concerning the SEC's Civil Penalty Claim Are Irrelevant.

Rather than confront these dispositive facts concerning the disgorgement amount owed to the SEC by the Debtor as a result of the *pre-petition* summary judgment finding establishing liability, the Debtor focuses instead on the civil penalty amount sought by the SEC. This is truly a red herring, since the SEC expressly informed the bankruptcy court in its memorandum of law that it was not basing its motion on the civil penalty amount. (SEC Brief, p.2, fn.1) Again, the fact that the civil penalty amount may arguably have been disputed by Smith at the time of the Petition Date is utterly irrelevant, since the motion to dismiss is based solely on the undisputed $2,095,517 disgorgement claim.

### 3. Debtor Misconstrues the Meaning of Noncontingent.

In his Response, the Debtor suggests that the disgorgement amount was contingent, "because the District Court had yet entered an order fixing and awarding the SEC a right to payment of a monetary remedy." (Def. Response, p. 2). Debtor's suggestion that a debt or claim remains contingent, as that term is used in the Bankruptcy Code, up until the date on which it is reduced to a final judgment simply misstates the law. To the contrary, it is well-settled that a debt is noncontingent when all of the allegations upon which liability is based relate to events that have "occurred prior to the filing of the bankruptcy petition." *U.S. v. Verdunn*, 89 F.3d. 799 (11th Cir. 1996); *In re Knight*, 55 F.3d 231, 236. As the Second Circuit made clear in *In re Mazzeo*, 131 F.3d 295, 303 (2d Cir. 1997), "although the creditor's ability to collect the sum due him may depend upon adjudication, that does not make the debt itself contingent."

None of the authorities cited by the Debtor in his Response supports his interpretation of contingent. The Debtor first cites to *In re Carpenter*, 79 B.R. 320 (S.D. Ohio 1987). But in that case, the bankruptcy court actually granted a motion to dismiss a Chapter 12 case and found that

3

the principal amount of the debts at issue were "not contingent, as that term is normally used," even though the debtor in that case contested them. *Id.* Thus, Carpenter actually directly refutes the Debtor's interpretation of the meaning of contingent. *In re Hughes,* also cited by the Debtor, related to a tort claim where, unlike here, there had not already been a finding as to liability. *Hughes*, 98 B.R. 784, 788 (S.D. Ohio 1989). The Debtor last cites to *In re Pearson*. The Debtor's reliance on this case is also misplaced, since the court did not address the issue of the meaning of contingent at all in that opinion. Instead, in *Pearson*, the Sixth Circuit spoke in terms of whether a "substantial dispute" remained, and did so in the context of interpreting whether a particular claim was liquidated. The court's holding in *Pearson* was based on its determination that a substantial dispute remained concerning whether a certain debt was secured or unsecured. 773 F.2d 751, 754 (6th Cir. 1985).

Not surprisingly, the Debtor ignores altogether a more relevant, subsequent Sixth Circuit decision, *In re Alt*, cited by the SEC in its initial brief. 305 F.3d 413 (6th Cir. 2002). In *Alt,* the court upheld a bankruptcy court's finding that a debtor was ineligible for Chapter 13 relief under 11 U.S.C. 109(e) based on "a tax debt, which put her clearly over the jurisdictional limit at the time under 11 U.S. C. 109(e).[2] *Id.* at 421. Most significantly, the court of appeals upheld the bankruptcy court's finding concerning ineligibility under Section 109(e), even though no judgment had been entered against the debt concerning the debt. *Id.* at 419. The sole basis for the recognition of the debt for purposes of Section 109(e) was the IRS' issuance of a statutory

---

[2]  In *In re Alt*, the Sixth Circuit upheld the bankruptcy court's ruling on two independent grounds, one of which was based on debtor's ineligibility under Section 109(e) and the other of which was based on a claim of bad faith. The court made clear, expressly, that it found "no reason to disturb the bankruptcy court's order on **either basis**," concluding that the bankruptcy judge's "legal analysis was sound." *Id.* at 418 (emphasis added). Elsewhere in the opinion, the Sixth Circuit noted that it felt "no need to deal at length with the bankruptcy's court's additional ruling that Alt did not meet the eligibility requirements of Section 109(e)," since it had already found that Alt's petition was not filed in good faith.

4

notice of deficiency. *Id.* at 415. No lawsuit by the IRS had even been filed, much less liability established.

Here, in contrast to *Alt,* not only had the court granted summary judgment as to liability for fraud prior to the Petition Date, but the parties had also filed a joint filing agreeing to the precise disgorgement amount that should be imposed by virtue of the liability finding. *Alt* makes clear that the Sixth Circuit does not share the Debtor's view that a claim must be reduced to a judgment in order to be deemed noncontingent.

Not only does the Debtor's argument that that "every debt must be reduced to a final judgment in order to be deemed noncontingent" finds no support in this or any other circuit, but it also constitutes an unreasonable reading of the statute. If it were, then every debtor could avoid the debt ceilings imposed by Section 109(e) simply by disputing the debt and forcing the debtor to obtain a judgment. The Debtor's argument, taken to its logical conclusion, would turn every promissory note and every contractual obligation into a contingent debt, unless such a debt was an adjudicated debt as to which a final judgment was entered. All that a debtor would have to do is say that he contests the debt, and then file for bankruptcy under Chapter 13. Certainly, if this is what Congress had intended, it could have put in language that so required a debt to be reduced to a final judgment in order to be considered noncontingent. If a judgment were required for a debt to be recognized, Section 109(e) would have said so.

    **4.**    **Debtor Makes No Real Argument Concerning Whether His Debt to the SEC was "Liquidated" as of the Petition Date.**

The Debtor's argument concerning whether his debt was "liquidated" as of the Petition Date is unclear. To begin with, the Debtor does not set forth what he believes to be the legal standard. The SEC did. As the bankruptcy court expressed it in *Hughes* (a case relied upon by Debtor): "A claim is liquidated if its *amount* is readily ascertainable." 98 B.R. at 789 (emphasis

5

in original).   As discussed above, in this case both parties agreed as to the disgorgement amount in the proposed final pretrial order, which was filed prior to the Petition Date.  In this case, the disgorgement amount was not merely "readily ascertainable," but undisputed down to the last dollar.

The Debtor did dispute the civil penalty amount sought by the SEC, and did dispute what injunctive relief, if any, should flow from the district court's summary judgment findings.  But again, this is of no moment, since the SEC's motion to dismiss or convert is based on the disgorgement claim, which is approximately five times greater than the limitation for unsecured debts under Chapter 13 and thus requires dismissal or conversion of the Debtor's Chapter 13 case.

     5.     **Debtor's Good Faith is Questionable and Does Not, In Any Event, Affect the Outcome of this Motion.**

The last argument raised by Debtor in his Response is that he acted in good faith at the time of the filing of the petition.  Debtor likely raised this argument because the SEC stated in its opening brief that dismissal or conversion of Debtors Chapter 13 petition was appropriate, regardless of "whether the court found that Smith acted in bad faith or not by failing to list the amount of the SEC's claim in his schedules," since he failed, his unsecured noncontingent and liquidated indebtedness to the SEC greatly exceeded the liability limits for Chapter 13 relief.  (SEC Br. at 6).   Nothing in debtor's submission changes that fact.

To be sure, the Debtor's good faith is at issue, since, prior to the Petition Date, he had jointly filed with the SEC the proposed final pretrial order, in which he did not dispute the disgorgement amount of $2,095,517.   The Debtor's good faith must be called into question given that he omitted to include the amount of the SEC's claim in the bankruptcy schedule even though amount of the SEC's claim (including both disgorgement and civil penalties) was plainly

6

set forth in the joint final pretrial order prior to the Petition Date. While the Debtor might have disputed whether the amount of the SEC's claim was contingent or liquidated, he could not reasonably have disputed the amount of the claim, which was set forth in black and white in the final pretrial order.

Even if this Court declines to find that the Debtor acted in good faith, the SEC's motion to dismiss or convert the Debtor's Chapter 13 case should be dismissed because "good faith" is simply not a defense to ineligibility under Section 109(e). Moreover, nothing in the Bankruptcy Code or the case law suggests that a bankruptcy judge's determination of eligibility under Section 109(e) must be limited to a review of the Debtor's bankruptcy schedules where, as here, such schedules have been shown to be incomplete and erroneous as of the Petition Date. The Sixth Circuit, in *Pearson*, did not say that a bankruptcy court should look "exclusively" to the bankruptcy schedules to determine eligibility. It said "primarily," and was informed by the facts of that case, which showed that a substantial dispute continued to exist as of the Petition Date as to the nature of the debt (secured vs. unsecured). *Pearson*, 773 F.2d at 756, 758. In other words, in *Pearson*, it was the fact that the nature of the debt was still substantially in dispute that rendered reasonable the bankruptcy court's reliance on bankruptcy schedules that adopted the Debtor's position concerning this dispute. Here, by contrast, the evidence is clear that there was no dispute whatsoever as to the amount of disgorgement owed by the Debtor to the SEC as of the Petition Date. Whether inadvertent, the product of a mistaken view of the law, or an intentional act to deceive, the Debtor must not be rewarded for his failure to list the amount of the SEC's claim in his schedules. This is especially the case where, as here, the debt arose from the Debtor's own fraudulent conduct, where liability for such fraud was already established as a

7

matter of law, and where the amount of disgorgement far exceeded the limit for eligibility under Section 109(e) and was not even in dispute as of the Petition Date.

## **Conclusion**

WHEREFORE, for the reasons set forth above and in the SEC's other submissions in support of this motion, the Securities and Exchange Commission respectfully requests that the Debtor's Chapter 13 case be dismissed or converted to Chapter 7.

Respectfully submitted,

For Creditor U.S. Securities and Exchange Commission:

Dated:   March 17 2006

/s/ Angela D. Dodd_____
Angela D. Dodd
IL Bar No. 6201068
Tel. No: 312-353-7400
dodda@sec.gov


/s/ Sonia A. Chae_____
Sonia A. Chae
IL Bar No. 6199271
Tel. No: 312-353-6269
chaes@sec.gov


/s/ Steven J. Levine
Steven J. Levine
IL Bar No: 6226921
Tel. No: 312-886-1774
levines@sec.gov

U.S. Securities and Exchange Commission
175 W. Jackson Blvd., Suite 900
Chicago IL 60604
Fax No. 312-353-7398