## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No.  05-74493 |
| Bradley T. Smith, | : | Chapter 13 |
| Debtor. | : | Judge John E. Hoffman Jr. |

## DEBTOR'S BRIEF IN SUPPORT OF HIS ORAL ARGUMENT AND IN OPPOSITION TO THE SECURITIES AND EXCHANGE COMMISSION'S REPLY MEMORANDUM, <u>DOCKET NO. 33</u>

Now comes Bradley T. Smith, the Debtor, by and through counsel W. Mark Jump, and files this brief in support of his oral argument and in opposition to the Securities and Exchange Commission's (SEC) Reply Memorandum in Support of its Motion to Dismiss or Convert Debtor's Chapter 13 Case *(Docket No. 33)*.

### <u>Introduction and Summary of Prior Pleadings</u>

The SEC alleged, in its Motion to Dismiss or Convert the Debtor's Chapter 13 Case, *Docket No. 23*, that the Debtor's case should be dismissed or converted because: (1) on the petition date the Debtor owed the SEC an unsecured non-contingent and liquidated debt which exceeded the 11 U.S.C. section 109(e) debt ceiling; and (2) the Debtor did not act in good faith in scheduling the SEC's claim as contingent, unliquidated and unknown as to amount.

The Debtor in his Response, *Docket No. 32,* explained that the SEC's monetary claims— for civil penalties and equitable disgorgement—were excluded from the debts used to calculate eligibility under 109(e) because, on the petition date, the Debtor's duty to pay SEC's requested monetary remedies remained contingent and unliquidated.

The Debtor explained that the SEC's claim was contingent as to monetary liability because, even though the Debtor had been found liable for securities violations, on the petition

date the Debtor's duty to pay the SEC's requested monetary remedies had not been established and depended (as to existence and amount) on the SEC's ability to secure a disgorgement order. Further, given the discretionary nature of the SEC's requested monetary remedies, at the petition date, it was uncertain whether the Debtor would ever have a duty to pay the SEC. Similarly, the SEC's claim was not liquidated at the petition date because the determination of what amount, if any, should be imposed against each defendant was not readily ascertainable and could not be determined to a legal certainty as required by law. In fact, the SEC's requested disgorgement against the Debtor was still subject to a substantial dispute and depended on the District Court's exercise of its judgment and discretion in determining what amount of disgorgement, if any, was appropriate or necessary for the benefit of the investors. Additionally, the Debtor acted in good faith when filling out his schedules because at that time the monetary amount attributed to him in the form of a disgorgement remedy was simply unknown—excludable from the 109(e) debt ceiling—which is exactly how the Debtor scheduled the claim. In fact, the disgorgement remedy sought by the SEC was undetermined as it related to the Debtor up until the Parties signed their post-petition voluntary and conditional Joint Stipulations.

Additionally, the Debtor finds it unnecessary to address the SEC's civil penalty claim separately. First, the SEC has asserted that its civil penalty claim is "irrelevant" because its motion to dismiss is based solely on its disgorgement claim. *See Docket* 33, p. 3. Further, it is clear that the Debtor's legal arguments are equally applicable to the SEC's civil penalties claim because, as with equitable disgorgement, the District Court had broad discretion in determining the appropriate amount of said penalty. *Final Pretrial Order, Docket No. 43, p. 12* ("Courts have broad discretion in determining the appropriate amount of any penalty."); s*ee also In re Hughes,* 98 B.R. 784, 788, n2 ("A claim for punitive damages is not a liquidated debt").

Even so, the SEC, in its Reply Memorandum *(Docket No. 33)*, erroneously attempts to interpret the Parties proposed Joint Final Pretrial Order, *Docket No. 24, Ex. F,* as establishing that the post-petition evidentiary hearing was irrelevant to its disgorgement claim against the Debtor because: 1) there was no dispute as to the Debtor's liability or the amount of disgorgement he owed the SEC, and 2) the Debtor had already agreed that he owed the SEC the entire amount it sought.   Also, the SEC complained that the Debtor's Response "failed utterly" because the Debtor's did not address portions of the factual record that the SEC believed to be "key" and had failed address the cases the SEC cited.

The Debtor feels these aggressive assertions merit a written response because they are unsupported by law and directly contradicted by the record in the District Court.

First, SEC's interpretation of the purpose of the scheduled evidentiary hearing and of the status of the Debtor's duty to pay the SEC's requested disgorgement are directly contradicted by the Parties proposed Joint Final Pretrial Order itself, *Docket No. 24, Ex. F,* and its final version, the District Court's December 2, 2005 Final Pretrial Order, *Docket No. 43*.   Contrary to the SEC's assertions, both documents clearly establish that on the petition date the existence and amount of the Debtor's potential duty to pay the SEC's monetary remedies, both personal and derivative, were still contested issues of fact that needed to be resolved at the District Court's post-petition evidentiary hearing.   Second, none of the cases relied on by the SEC establish that an equitable disgorgement claim is non-contingent when a debtor's duty to pay has not yet been established and will only be triggered if the creditor (i.e. SEC) is successful in convincing a judge to impose disgorgement or in convincing multiple defendants to voluntarily stipulate.   Third, none of the cases relied on by the SEC establish that an equitable disgorgement claim is liquidated when the specific amount of said claim is not specified by statute or agreement, but instead depends on a district court's exercise its broad discretion—unrestrained by specific criteria—in making the

factual determination as to what amount of disgorgement, if any, is appropriate or necessary for the benefit of the investors.

What the SEC fails to acknowledge is that in rendering its September 27, 2005 Opinion and Order on Summary Judgment, the District Court did not divest itself of its broad discretion to independently determine what amount of equitable disgorgement, if any, was appropriate.  If, as the SEC claims, the District Court had already determined that the Debtor should be held liable for the SEC's entire requested disgorgement, the District Court could have simply awarded the SEC's request in its Opinion and Order on Summary Judgment.  In fact, instead of simply awarding the disgorgement that the SEC had already requested in its Motion for Summary Judgment, *Docket No. 24, Ex. C, p. 3,* the District Court scheduled a separate evidentiary hearing to determine what amount of monetary remedies, if any, should be imposed against each defendant.  The District Court's Order on Summary Judgment specifically states: "The Court will not rule on the SEC's requested remedies at this time, but will instead conduct a hearing on the requested remedies at a future date after the trial concludes."  *Docket No. 24, Ex. E.*  Logically, there would be no reason to schedule such a hearing unless the disgorgement remedy relating to the Debtor was not only contingent on the outcome of the hearing, but also, still not readily ascertainable and subject to a substantial dispute on the date the District Court issued its Opinion and Order.

For this reason, none of the facts relied on by the SEC establish that regardless of the testimony and evidence the Parties intended to present at the evidentiary hearing, the District Court was obligated to impose on the Debtor a duty to pay the SEC's entire requested disgorgement.  To the Contrary, the obvious detrimental effect that awarding the SEC's entire requested personal and derivative disgorgement against the Debtor would have on the investors' capitol invested in Continental and Scioto, makes evident the extent and importance of the

District Court's ability to exercise its discretion in determining the appropriate amount of disgorgement, if any, to impose against the Debtor.

Therefore, in light of the SEC's erroneous interpretation of record and its adamant, yet misplaced, reliance on the cases cited in its Memorandum of Law, *Docket No. 24,* the Debtor feels obligated to address these issues through his counsel.

<u>**Arguments in Response to the SEC's Reply Memorandum**</u> *(**Docket No. 33**)*

**1.  The District Court had broad discretion in determining what amount of equitable disgorgement, if any, to award the SEC, as such, the Debtor's duty to pay remained contingent and unliquidated until the SEC secured either: (a) a voluntary agreement of the Parties or (b) a District Court adjudication determining that the disgorgement sought by the SEC was appropriate or necessary for the benefit of the investors.**

The SEC complained the Debtor's response had failed to address key facts, raised by the SEC, that were necessary to the Court's 109(e) determination.  The Debtor believes that this criticism is misplaced.  There is however, one fact, that the Debtor feels should be further emphasized.   That fact is that the District Court had broad discretion in independently determining whether the type and amount of the equitable remedy sought by the SEC was appropriate or necessary for the benefit of the investors.  *See* 15 U.S.C. § 78u(d)(5).

Section 109(e) states that "only an individual…that owes, on the date of filing of the petition, noncontingent, liquidated, unsecured debts of less than" $307,000.00 will be allowed to file Chapter 13. (*emphasis added).*  Hence, the starting point to any 109(e) determination should be to isolate that specific point in time when it is certain that a debtor actually owes or has a duty to pay a specific amount on a certain date.  *See e.g. In re Carpenter*, 79 B.R. 316, 318 (Bankr. S.D. Ohio, 1987).  For this, we need to look at the law, statute or agreement upon which the

creditor's claim is based to determine what specific events could trigger the debtor's duty to pay and determine what specific monetary remedies attached to said triggering events.  *See Id.*

In this case, given the equitable nature of the SEC's disgorgement claim and the District Court's broad discretion in determining what amount of disgorgement, if any, to award in civil enforcement actions, the only events that could have triggered the Debtor's duty to pay the SEC's entire requested disgorgement were: (1) a voluntary agreement by the Parties, or (2) a prepetition District Court order imposing, against the Debtor, the specific amount of disgorgement requested by the SEC.  However, neither of these existed prepetition and the SEC has presented no evidence to the contrary.

First, in civil enforcement actions brought by the SEC, Congress did not give the SEC a unilateral right to impose a duty to pay disgorgement on the Debtor.  Also, the SEC can not point to any statute, law or agreement that automatically imposed a duty to pay the SEC any specific amount of disgorgement upon the Debtor's commission of the type of acts alleged in the underlying civil enforcement action.  It is precisely for this reason that the underlying civil enforcement action before the District Court was necessary.

Additionally, while the District Court was authorized to impose disgorgement, it was not mandated by statute or law to impose on the Debtor any specific amount of disgorgement.  The code section which authorizes district courts to impose equitable disgorgement in civil enforcement actions merely states that "the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors."  15 U.S.C. § 78u(d)(5).  However, unlike with other statutory provisions, Congress did not set out specific actions or omissions which when committed would automatically create a duty to pay any amount of disgorgement to the SEC.  Similarly, Congress did not list any specific

mathematical formula for determining the amount of equitable disgorgement a District Court must impose.

Instead, in civil enforcement actions brought by the SEC, Congress left it up to the District Court, in the exercise of its broad equitable discretion, to decide whether to grant any disgorgement and if so, what specific amount would be appropriate or necessary for the benefit of the investors. *See* 15 U.S.C. § 78u(d)(5). Hence, in the underlying civil enforcement action the SEC is relying on a District Court to exercise its discretion to create and fix the defendant's duty to pay and not merely attempting to collect a pre-existing debt. For this reason, until the equitable disgorgement remedy is granted by the District Court or the defendant voluntarily agrees to pay the SEC, no duty to pay the SEC any amount of disgorgement is established and thus no debt is owed for purposes of 109(e).

It is well settled that "a district court enjoys broad discretion in fashioning a disgorgement remedy." *See S.E.C. v. Namer*, 2006 WL 1541378, 1 (2nd Cir. 2006). In addition, the decision to order disgorgement of ill-gotten gains, and the calculation of those gains, lie within the discretion of the trial court, which "must be given wide latitude in these matters." *See S.E.C. v. Lorin*, 76 F.3d 458, 462 (2d Cir.1995). Contrary to what the SEC would like this Court to believe, the Sixth Circuit has never held that a district court's inquiry is limited to the mere mathematical computation of the amount of money received or that a district court must ignore the effect on the investors and automatically order disgorgement of the entire amount of money received in a stock offering. *See SEC v. Great Lakes Equities Co.*, 775 F. Supp. 211, 214 (D. Mich. 1991)(merely stating that "the Sixth Circuit has held, *by implication*, that the entire amount of profits which were illicitly received must be disgorged…[even though]…Blavin does not explicitly hold that no deductions may be taken…").

This is why, a decision to award the SEC an equitable remedy that will exhaust a defendant's assets requires careful independent consideration by the District Court.  *See e.g. S.E.C. v. Prater*, 289 F.Supp.2d 39, 54 (D.Conn, 2003)(*citing SEC v. Manor Nursing Ctrs., Inc.,* 458 F.2d 1082, 1105 (2nd Cir.1972)).   For this reason Congress gave the district courts broad equitable powers to grant ancillary relief where necessary and proper to effectuate the purposes of the securities law and to protect the interest of investors.  *See Id.* (*citing SEC v. Economou,* 830 F.2d 431, 438 (2nd Cir.1987)); *see also* 15 U.S.C. § 78u(d)(5)("the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors").    However, when making this determination, the District Court must independently weigh the need to deprive the alleged violator or his ill-gotten gains and deter future violations, against the possibility that the SEC's requested equitable remedy itself will cause such disruption of the defendant's legitimate business affairs that the investors would be placed in greater danger of losing their investment." *See e.g. S.E.C. v. Prater* , 289 F.Supp.2d 39, 54 (D.Conn, 2003)(*involving* a court's equitable discretion in determining whether to grant the SEC's request to continue an asset freeze).  In this case, the District Court would have been aware that, unlike in cases where the SEC's requested disgorgement is limited to a defendant's own profits and will be paid out his own pocket, the Debtor's derivative disgorgement would be paid, if at all, out of the allegedly defrauded investors' equity in Continental and Scioto.

This is why the District Court's ability to exercise its broad discretion to determine whether the SEC's requested equitable remedy is appropriate or will not further injure the interest of the investors could not have been constricted by Sixth Circuits holding in *S.E.C. v. Blavin*, 760 F.2d 706 (6th Cir. 1985).  In *Blavin* the Sixth Circuit merely stated that   "once the [SEC] establishes that a defendant has violated the securities laws, the district court possesses the equitable power to grant disgorgement without inquiring whether, or to what extent, identifiable

private Parties have been damaged by . . . fraud." *Id.* at 213. This statement, however, at most, relieves the SEC of the burden of proving detrimental reliance or actual harm to the allegedly defrauded investors, but in no way excuses or prohibits a district court from considering all evidence presented by a defendant that would be useful in determining whether the SEC's requested remedies are appropriate or necessary for the benefit of the investors.

*Blavin* is distinguishable from the underlying civil enforcement action because in that case granting the SEC's requested disgorgement of Blavin's profits posed no danger to the interests of the defrauded investors. Unlike in the present case, the lower court in *Blavin* was not required to balance the need to grant the SEC's requested disgorgement against the need to protect the interest of the investors because the investors in that case did not own any equity in Blavin's sole proprietorship. Hence, unlike in the present case, in *Blavin*, there was no need for the District Court to exercise its broad equitable discretion to independently determine if the SEC's requested disgorgement was appropriate or necessary for the benefit of the investors. In *Blavin,* the interests of the investors were in no way implicated by granting the SEC's entire requested disgorgement.

In contrast, based on the particular facts of the Debtor's underlying District Court case, it defies logic to assume that the District Court would not have been required to exercise discretion in determining whether granting the SEC's entire requested disgorgement against the Debtor— personal and derivative—was appropriate or necessary for the benefit of the allegedly defrauded investors. For instance, given the obvious detrimental effect that granting the SEC's entire requested disgorgement against the Debtor would have had on the investors' equity interest in Continental and Scioto, the District Court would have certainly been required to weigh the necessity of granting the SEC's disgorgement against the possibility that the disgorgement order itself would injure the investors. Hence, even assuming that the District Court was correct in not

considering the numerous investor affidavits at the liability stage, had the hearing on remedies

taken place, it is highly unlikely that the District Court, in determining whether to grant the SEC's

entire requested disgorgement against the Debtor, would not have considered the investors'

testimony, their affidavits and other evidence relevant to the investor's interests.  *See Final*

*Pretrial order , Docket No. 43, p. 22—23(*list of witnesses and exhibits for hearing*); see also,*

*Investor Affidavits, Ex. No. 1.*

In fact, when making the factual determination of what amount of disgorgement, if any,

was appropriate to impose on the Debtor, the District Court's discretion certainly would have

been affected by facts such as the following: 1) the allegedly defrauded investors own an equity

interest in Continental and Scioto; 2) numerous investors had completed affidavits stating that

they were not defrauded but were told that their investment would be used as start up capital, and

that they wanted the companies to continue doing business and not be destroyed by the SEC's

civil enforcement action. *See Investor Affidavits, Ex. No. 1,*; 3) in numerous affidavits investors

state that they consider the Debtor essential to achieving what they bargained for, do not believe

that they were defrauded by the Debtor and would like to continue doing business with him. *See*

*id.* 4) the Debtor's potential control person liability is derivative and thus Continental and Scioto

would have been found liable for the SEC's entire requested disgorgement before he could be

liable as a control person; and 5)  the investors' equity interest in Continental and Scioto would be

destroyed if the District Court awarded the SEC its entire requested disgorgement.  These facts

were before the District Court when it scheduled the evidentiary hearing on remedies.  Also, if the

evidentiary hearing had taken place, these facts, investor testimony and other evidence the Debtor

intended to present would have certainly been central to the District Court's factual determination

of what amount of disgorgement, if any, was appropriate or necessary for the benefit of the

10

investors. *See Final Pretrial order*, Docket No. 43, p. 22—23*(list of witnesses and exhibits for hearing); see also, Investor Affidavits, Ex. No. 1.*

Therefore, the SEC's contention that the District Court was obligated to impose on the Debtor a duty to pay the SEC's entire requested disgorgement regardless of what testimony and evidence the Debtor presented at the evidentiary hearing, is unsupported in law or fact.

**2. Nothing in the record establishes that the Debtor had a prepetition duty to pay the SEC or that the District Court was obligated to grant the SEC's entire requested disgorgement amount.**

First, given that the SEC's disgorgement claim is an equitable remedy within the exclusive discretion of the District Court, none of the pre-petition facts so heavily relied on by the SEC change the fact that the Debtor's duty to pay the SEC remained contingent and unliquidated until the Parties signed their postpetition joint stipulations.  Second, the post-petition facts the SEC continues to rely on are immaterial to the Court's 109(e) determination because as plainly stated in the statute, section 109(e) is only concerned with non-contingent and unliquidated debts that the Debtor "owe[d], on the date of the filing of the petition" and not with any post-petition resolution that creates the Debtor's duty to pay.  *See* 11 U.S.C. § 109(e).

**a. None of the facts relied on by the SEC created a prepetition duty to pay the SEC or divested the District Court of its exclusive authority to decide whether disgorgement, in any amount, was appropriate or necessary to protect the investors.**

The SEC seems to believe the facts it relied on in its Motion to Dismiss *(Docket No. 23)* and Memorandum of Law *(Docket No. 24)* are "key" to the Court's 109(e) determination. However, as, explained above, the District Court had broad discretion to determine what amount of disgorgement, if any, was appropriate and necessary for the benefit of the investors.  Further, the outcome of that determination depended on the District Court's balancing of the necessity to

grant the SEC's requested disgorgement against the need to protect the interests of the investors. For this reason none of the facts the SEC cited establish that the Debtor had a "duty to pay" the SEC any disgorgement amount on the petition date or establish, with any degree of certainty, what amount of disgorgement, if any, the District Court was obligated to grant the SEC.

In its Memorandum of Law *(Docket No. 24)* the SEC pointed out the fact that it commenced the underlying civil enforcement action in which the Debtor was one of five defendants over a year prior to the petition date.  Similarly, the SEC pointed out that it had asked for disgorgement of all amounts raised through the Scioto and Continental offerings in its second amended complaint filed on June 3, 2005, which at that time, it determined to be over two (2) million dollars.  However, Congress did not grant the SEC unilateral authority to determine what amount of disgorgement the District Court must impose.  To the contrary, these facts at most indicate that the District Court had the SEC's disgorgement claim before it for over four (4) months when it refused to simply grant the SEC's disgorgement request and instead scheduled a post-petition evidentiary hearing in order to independently determine what amount of equitable disgorgement, if any, would be appropriate or necessary.  *See SEC's Motion to Dismiss, Docket No. 24. p. 2.*

Similarly, the fact that the conduct giving rise to the SEC's enforcement action occurred between early 2002 and 2004, is irrelevant when there is no statutory provision or law that automatically attaches a duty to pay disgorgement to said conduct.  Also, the fact that the District Court in its prepetition Opinion and Order determined that the total amount raised through the Scioto and Continental offerings was $2,095,517.00, and the fact that the SEC sought imposition of the maximum amount that could be awarded merely establish the maximum amount of disgorgement that District Court in the exercise of its judgment and discretion could have granted against all the defendants.  However, these facts by no means established what amount the

District Court was obligated to impose on the Debtor because there is no statutory provision which specifies the minimum or exact amount of disgorgement a District Court must impose.  In fact, just as the District Court had the authority to impose the maximum amount, it also had the authority to simply impose an injunction and/or civil penalties and order no disgorgement at all against the Debtor.

Further, the District Court's September 27, 2005 Opinion and Order does not rise to the level of creating a duty to pay the SEC any disgorgement because the District Court did not impose liability to pay disgorgement in that order.   As stated in the District Court's Final Pretrial Order, *Docket No. 43, p. 20—21,* even though there were no remaining issues of law or fact as to Smith, Continental or Scioto's liability for securities violations, whether the District Court should impose disgorgement on any defendant and the amount to impose, if any, were still contested issues of fact to be resolved at the postpetition evidentiary hearing.   Hence, mere liability for securities violations did not amount to a duty to pay the SEC's entire requested disgorgement. This is precisely why the District Court scheduled the evidentiary hearing in order to determine if it was appropriate to impose a duty to pay the SEC's requested remedies.

In addition, the SEC improperly continues to rely on the fact that the Debtor conditionally stipulated to all the SEC's requested remedies or the fact that the District Court's Final Judgment adopted the Parties' stipulations.  Both of these documents were filed on December 6, 2005, almost two (2) months after the Debtor's October 14, petition date.  As such these facts merely reflect the Debtor's post-petition voluntary and conditional resolution of the SEC's claim, and thus, are irrelevant to this Court's 109(e) determination.  *See* 11 U.S.C. § 109(e)("only an individual…that owes, on the date of filing of the petition, noncontingent, liquidated, unsecured debts of less than…")(*emphasis added*); *see also In re Pearson*, 773 F.2d 751, 756, 758 (6th Cir. 1985).  As explained at oral argument, the Debtor conditionally stipulated to all the SEC's

requested remedies in order to preserve litigation resources for his current appeal, and not because he believed that it was certain that the District Court would order him to pay all the SEC's requested disgorgement.  Further, the Parties' stipulations expressly state that they are conditional and become void if the Debtor is successful in his current appeal of the District Court's liability finding.  *Docket No. 24, Ex. G, p. 2.*

Thus, the SEC has been unable to point to a specific page in the factual record which indicates that prior to the Parties' Joint Stipulation, filed December 12, 2005, the Debtor's duty to pay the SEC's equitable disgorgement claim had been established—as to existence or amount— either by statute, judicial order, or agreement of the Parties.

**b.  The SEC's interpretation of the Proposed Joint Final Pretrial and of the purpose of the post petition evidentiary hearing is not only directly contradicted by the Proposed Joint Final Pretrial Order itself, but also by its final and dispositive version.**

Up to this point, the SEC's had merely recited facts that although not establishing the Debtor owed or had a duty to pay the SEC's requested disgorgement, were at least reflected in the record.  However, the SEC's interpretation of the Parties' non-binding prepetition Proposed Final Pretrial Order *(Docket No. 24, Ex. F)* and the Purpose of the scheduled evidentiary hearing are contradicted by District Court record.

The Debtor takes issue with the SEC's interpretation because it is directly contradicted by the Proposed Final Pretrial Order itself, by portions of the District Court record cited in the Debtor's Response, and the District Court's actual Final Pretrial Order filed on December 2, 2005, *Docket No. 43.*  In a very fundamental sense, the SEC has failed to come forth with any evidence to contradict the fact that well after the petition date the Debtor's personal and derivative monetary liability for disgorgement and the specific amount of that liability, if any, was still a contested issue of fact to be resolved at the post-petition evidentiary hearing.

The District Court scheduled a post-petition evidentiary hearing to determine if awarding the SEC's requested monetary remedies was appropriate or necessary for the benefit of the investors. This is in the record and key to the proper application of 109(e). However, the SEC, in its Motion to Dismiss *(Docket No. 23)* argued that its disgorgement claim was liquidated and non-contingent at the petition date because in the Parties' Proposed Final Pretrial Order *(Docket No. 24, Ex. F)* the Debtor had failed to dispute the amount sought by the SEC or the legal basis on which the SEC relied when requesting that amount. Later, the SEC, in its Reply Memorandum *(Docket No. 33),* states that the Debtors reliance on the fact that an evidentiary hearing was still scheduled at the petition date was misplaced—as it related to the Debtor's duty to pay disgorgement—because the Debtor had already agreed, in the Proposed Final Pretrial Order, that he owed or had a duty to pay the SEC's entire $2,095, 517.00 requested equitable disgorgement. Nevertheless, as reflected in the record, the Debtor never agreed prepetition that he owed the SEC any amount of disgorgement, and contested his liability for any disgorgement amount well after the petition date.

In support of its argument that the Debtor did not dispute and actually agreed that he owed the SEC's entire requested disgorgement, the SEC referenced portions of the Parties joint Proposed Final Pretrial Order, *Docket No. 24, Ex. F.* Nevertheless, the SEC failed to cite the part of the Proposed Final Pretrial Order, most relevant for this Court's 109(e) determination. That is, the part under the heading <u>Remedies</u>, which actually lists "The contested issues of fact remaining for decision with respect to the relief sought by the SEC." *Docket No. 24, Ex. F. p. 21.* Also, the SEC failed to cite to the remedies section of the District Court's actual and dispositive December 2, 2005 Final Pretrial Order; which also specifically listed the remaining contested issues of fact relating to the remedies sought by the SEC, and was filed just four (4) days before the scheduled evidentiary hearing was to take place. *Docket No. 43, p. 20—21.*

15

As shown below, the remedies section of prepetition Proposed Final Pretrial Order clearly contradicts the SEC's argument that the evidentiary hearing was irrelevant to the SEC's equitable disgorgement claim against the Debtor.  More importantly, the remedies section of the actual and dispositive District Court Final Pretrial Order also demonstrates that, well after the petition date, both the Debtor's personal, and joint and several liability for Continental and Scioto's potential disgorgement were still contested issues of fact.

**Proposed Final Pretrial Order, _Docket No. 24, Ex. F, p. 21._** (emphasis added).

**"5. Remedies**

The **contested issues of fact** remaining for decision **with respect to the relief sought** by the SEC are:

> d. Whether the Court should impose a civil penalty against Smith and, if so, in what amount.
>
> e. Whether the Court should order that **Smith** disgorge **his** ill-gotten gains and, if so, in what amount.
>
> f. Whether the Court should order that **Continental** disgorge **its** ill-gotten gains and, if so, in what amount.
>
> g. Whether the Court should order that **Scioto** disgorge **its** ill-gotten gains and, if so, in what amount."

**District Court Final Pretrial Order filed December 2, 2005, _Ex. 1. p. 20-21_**(emphasis added)

**"5. Remedies**

The **contested issues of fact** remaining for decision **with respect to the relief sought** by the SEC are:

(in addition to those in the proposed version)

g.  Whether the Court should order that Smith be held jointly and severally liable for the ill-gotten gains of Continental and Scioto as a "control person" pursuant to 15 U.S.C. § 20(a).

> h. Whether, **in the case that the Court declines to hold Smith jointly and severally**
> liable for the disgorgement of the ill-gotten gains of Continental and Scioto, the Court
> should order that Smith disgorge his personal ill-gotten gains and, if so, in what
> amount."

This language not only contradicts the SEC's argument but also is clearly in line with the portions of the record quoted in the Debtor's response.  Instead of acknowledging this fact, the SEC accuses the Debtor of trying to wish away inconvenient facts and of engaging in selective inclusion of the record.  *Docket No. 33, p. 5.*

Therefore, contrary to the SEC's interpretation, the proposed and final versions of the District Court's Final Pretrial Order and the other portions of the District Court record establish that the evidentiary hearing was required for the District Court to determine what amount of disgorgement, if any, it would impose on the Debtor.

**3. The SEC's argument that there was no substantial dispute whether the Debtor had a duty to pay the SEC's entire $2,095,517.93 requested disgorgement is unsupported in fact or law, and overlooks the fact that the Debtor's control person liability was derivative and could not have been certain at the petition date because, at that time, Continental and Scioto's liability for disgorgement had not been established.**

If the Debtor's joint and several liability for the disgorgement of the entire amount raised was already established, undisputed and certain, it seems inconsistent that the SEC would still be seeking a much smaller alternative disgorgement order for the portion of the $2,095,517.93 that the Debtor personally received.  For instance, even in light of the fact that the District Court's September 27, 2005 Opinion and Order had already determined that the Debtor was liable as a controlling person for the securities violations by Continental and Scioto, the SEC in the Proposed Final Pretrial Order states that, in such the event that the District Court did not find the

Debtor liable as a controlling person for the entire amount raised in the offerings, it [the SEC] "would seek disgorgement against Smith of all amounts that he received and that were spent for his benefit from the proceeds of the Continental and Scioto offerings." *See Docket No. 24, Ex. F. p. 9, 11*.

Similarly, in the remedies section of the official and binding Final Pretrial Order, the SEC again requested that if the District Court determined that it was inappropriate to hold the Debtor jointly and severally liable for the entire amount raised in the stock offerings, that in the alternative, the District Court order the Debtor to disgorge only the portion of the proceeds that he personally received. *Docket No. 43, p. 20—21.* If the District Court's determination that the Debtor was a controlling person automatically established that he had an duty to pay the SEC's entire requested disgorgement, this alternative smaller disgorgement request not only would be inconsistent, but would also be redundant. Hence, the re-inclusion of this alternative smaller disgorgement request demonstrates that even as late as December 2, 2005 the Debtor's control person liability did not automatically establish that he had a duty to pay the SEC's entire requested disgorgement.

Nevertheless, the SEC claims that the Debtor's control person liability for the securities violations of Continental and Scioto automatically created a duty to pay the SEC the entire $2,095,517.93 raised in both stock offerings. Not only does the SEC's position overlook the fact that the Debtor's joint and several liability was still a contested issue of fact, but also overlooks the fact that his control person liability was derivative. Thus, the Debtor's duty to pay the SEC's entire $2,095,517.93 could not have been established at the petition date because, much like the Debtor's personal liability for the amounts he personally received, Continental and Scioto's duty to pay the SEC's entire $2,095,517.93 disgorgement request had not been established and were still contested issues of fact.

Furthermore, the appropriateness of imposing on the Debtor, Continental and Scioto, joint and several liability for disgorgement of the entire $2,095,517.93 raised in both offerings, was subject to a substantial dispute and required the District Court to carefully balance the need to grant the SEC's request against the obvious harm to the interest of the investors. The outcome of this determination depended on the District Court's evaluation of the facts presented at the evidentiary hearing.

Among the facts that would have been presented were the investor affidavits and investor testimony about what they had bargained for and what they believed was in their best interest. *See Final Pretrial Order, Docket No. 43, p. 22—23*(witness and exhibit list for hearing on remedies); *see also Investor Affidavits, Ex. 1.* Further, even assuming that the fact that the investors had not relied on the inaccurate written statements, did not believe that they had been defrauded and desired the companies to not be destroyed by the SEC's enforcement action, were all irrelevant to whether the Debtor was liable for securities fraud. These facts by no means were irrelevant to the appropriateness of imposing an equitable disgorgement remedy that would destroy the investors' companies and would merely serve as a disguised penalty against the Debtor. *See Investor Affidavits, Ex. 1.*

On the one hand, the District Court could have decided to impose a duty to pay the SEC's entire requested disgorgement, jointly and severally against the Debtor, Continental and Scioto. The detriment to the investors would have been the complete destruction of their equity in Continental and Scioto, the destruction of any good faith or value created by the funds already expended in building up the companies and the destruction of any chance of success at realizing what they had bargained for. The only benefit to the SEC would be punishing the Debtor by imposing a $2,095,517.93 penalty disguised as disgorgement. As mentioned by the SEC's attorney during the SEC's opening statement, in reality the Debtor would be the only one liable

for most of the SEC's $2,095,517.93 requested disgorgement.  This is because the SEC knew that Continental and Scioto would have to be liquidated and thus did not have any realistic expectation of being paid its $2,095,517.93 requested disgorgement, but merely wanted the Debtor to be held liable for a $2,095,517.93 disgorgement order which greatly exceeds any profits he received.

On the other hand, the District Court could have determined that this was too big of a price for the investors and the Debtor to pay for failing to remove an inaccurate statement that no one actually relied on.  In other words, the District Court could have determined that the detriment to the investors' outweighed the SEC's interest in punishing the Debtor or simply that imposing disgorgement of $2,095,517.93 on the Debtor was inappropriate because it greatly exceeded any ill-gotten gains he might have received.   The District Court might also have determined that enjoining further violations by requiring the correction of the inaccurate statements was a more appropriate remedy because it would have allowed the companies to continue and given the investors a chance to attempt to develop the business plan for which the investors bargained.

Therefore, the Debtor's control person liability for securities violations could not have automatically established that the District Court would award the SEC's entire requested disgorgement against the Debtor, Continental and Scioto.

**4.   The SEC's criticism that the Debtor's response failed to address its cited cases is also misplaced because none of those cases involved an equitable disgorgement claim like the SEC's and actually demonstrate why the SEC's claim was contingent and unliquidated.**

With the exception of *In re Pearson,* 773 F.2d 751 (6th Cir. 1985), and *In re Alt,* 305 F.3d 413 (6th Cir. 2002), the cases cited in the SEC's Memorandum of Law (*Docket No.* 24) are not even from the Sixth Circuit and/or are inapposite to the SEC's argument that its equitable disgorgement claim was non-contingent and liquidated pre-petition.  Unlike the SEC's equitable

disgorgement claim which depends as to existence and amount on the District Court's discretion, the cases relied on by the SEC involved claims based on statutes where the debtors' duty to pay had been created and liquidated, prepetition, by the specific triggering events and monetary criteria contained in the statutes. *See e.g. In re Alt,* 251 B.R. 831 (W.D.Mich. 2000)(involving a tax deficiency claim). For this reason, if those creditors found it necessary to file a suit in order to collect on their particular type of debt—i.e. tax debt—this act would not retroactively render their debt contingent or unliquidated. However, in this case the SEC was not merely relying on the District Court to enforce or collect its pre-existing right to demand payment from the Debtor, but instead, was relying on the District Court's broad equitable discretion to create and liquidate the Debtor's duty to pay the SEC's requested monetary remedies.

**a. The SEC's claim remained contingent until the Parties stipulated because the SEC filed its civil enforcement action to request that the District Court use its equitable power to create the debtors duty to pay the SEC and not merely to collect what it was already owed.**

The SEC's argument that the Debtor's Response misconstrued the meaning of contingent is without merit because in his Response, the Debtor used the definition of contingent debts stated by this Court in *In re Carpenter,* 79 B.R. 316, 319 (Bankr.S.D.Ohio,1987). Further, the Eleventh Circuit's standard, quoted by the SEC to support this argument, is not even applicable to the SEC's equitable disgorgement claim because the Debtor's duty to pay the SEC was not automatically triggered by the events giving rise to the Debtor's liability for securities violations, and instead could only be triggered by a court order or voluntary agreement.

This Court in *In re Carpenter* stated that contingent debts are "claims which depend either as to their existence or their amount on some future event which may not occur at all or may not occur until some uncertain time." *In re Carpenter,* 79 B.R. at 319 (*citation omitted*). On the petition date the SEC's disgorgement claim against the Debtor fell within this description because

the Debtor's duty to pay depended as to existence and amount on the SEC's success in convincing the District Court to order the Debtor to disgorge the SEC's entire requested amount or in convincing the Debtor to voluntarily stipulate to the SEC's request.  Thus, at the petition date, the uncertainty of the SEC's success rendered its claim contingent.

The SEC in its Reply Memorandum incorrectly states that "the Debtor's argument that '*every debt must be reduced to final judgment in order to be deemed noncontingent*'…would turn every promissory note and every contractual obligation into a contingent debt…" *Docket No. 33, p. 5*.  However, this is clearly not the Debtor's argument and is nowhere in the Debtor's Response.  In fact, this statement by the SEC demonstrates that it has overlooked the fundamental distinction between its equitable disgorgement claim, and claims based on agreements or statutes that have specific monetary provision that automatically create a duty to pay a specific amount when the acts or omissions specified in those statutes or agreements take place.

The SEC correctly points out that Congress did not put "reduced to judgment" as a condition for inclusion in 109(e).  However, when Congress enacted 109(e) it did not divest itself of the ability to enact other statutes that have a discretionary judicial determination as the event that will render a debtor's duty to pay noncontingent or that require a court to exercise its broad discretion to liquidate a creditor's claim.  As such, the SEC's claim was not contingent merely because it was not reduced to judgment, but because as an equitable disgorgement claim in a civil enforcement action, no duty to pay could arise until the SEC secured a court order or an agreement.

In fact, the Debtor is not arguing that all claims or even that all disgorgement claims by the SEC will be contingent and unliquidated until the SEC gets a court order or an agreement, but merely that in civil enforcement actions Congress contemplated that the Debtor would only have a "duty to pay" the SEC's requested disgorgement if the District Court so ordered.  *See* 15 U.S.C.

§ 78u(d)(5).  Some statutes—such as those contained in the Tax Code—give the agency enforcing the provisions the authority to impose or demand the payment of a monetary amount without having to rely on a court to exercise its judgment and discretion, unrestrained by specific criteria. *See e.g. In re Alt,* 251 B.R. 831, 835 (W.D.Mich. 2000)(*involving* a tax deficiency claim). Similarly, when Congress wanted to grant the SEC the authority to unilaterally impose a duty to pay disgorgement on its own and without the need for relying on a district court's discretion, it did so explicitly. *See e.g.* 15 U.S.C. § 78u-2(e)("Civil remedies in administrative proceedings…In any [administrative] proceeding…the Commission…may enter an order requiring accounting and disgorgement, including reasonable interest.").

For this reason, a fair and proper application of 109(e) cannot overlook the essential distinction created by the fact that the SEC was not merely before the District Court in order to collect a pre-existing debt but was relying on the District Court to exercise its equitable discretion—unrestrained by specific criteria—to create and liquidate the Debtor's duty to pay. This distinction, sets the SEC's claim apart from tax debts, promissory notes, mortgages, contract claims and other statutory claims, and is precisely what placed the SEC's pre-petition claim squarely outside of the parameters of 109(e) on the October 14, 2005 petition date.

Instead of acknowledging this fundamental distinction, the SEC confuses liability for a securities laws violation with liability amounting to a duty to pay, and thus, fails to realize that 109(e) is only concerned with monetary liability or debts that the Debtor actually owes at the petition date.

In addition, this distinction is what makes clear why the SEC's continued reliance on *In re Alt* and the other cases it cited is misplaced.  What the SEC has overlooked is that those cases involved claims based on statutes or agreements that listed the specific events or acts that had automatically triggered that debtor's prepetition duty to pay.  It is for this reason that none of the

23

cases the SEC cited support its contention that its equitable disgorgement claim was non-contingent when the Debtor's duty to pay had not yet been established and could only be triggered if the SEC was successful in convincing a judge to impose disgorgement or in convincing the Debtor to voluntarily stipulate.

The fact that in *In re Carpenter* the Court found that the specific terms of the farm storage notes, warehouse storage notes and reserve agreements, involved in that case, created a prepetition non-contingent duty to pay a certain amount, does not change the fact that in the SEC's underlying civil enforcement action, a mere finding of securities violations did not automatically create a duty to pay the SEC's requested disgorgement. *See In re Carpenter,* 79 B.R. *at* 319. Similarly, *In re Alt* and *In re Verdunn* involved tax debts, where as mandated by the specific terms of the Tax Code, that debtor's duty to pay was triggered as soon as the IRS sent its demand letter. *In re Alt,* 305 F.3d 413 (6th Cir. 2002); *In re Verdunn*, 89 F.3d 799 (11th Cir. 1996). In addition, *In re Knight* involved a statutory claim were explicit provisions of an Indiana statute mandated that the debtor's duty to pay a specific ($100 per incident) civil penalty arose as soon as he failed to report 915 traffic convictions to the Indiana bureau of motor vehicles. *See In re Knight,* 55 F.3d 231 (7th Cir.1995).

For this reason, the SEC criticism of the Debtor for not citing *In re Alt* is misplaced. The lower court's reasoning in that case actually demonstrates why the SEC's claim was contingent on the petition date. *See In re Alt,* 305 F.3d 413 (6th Cir. 2002). The district court in *In re Alt* reasoned that in that case the debtor's duty to pay the IRS was non-contingent because "a taxpayer's duty to pay taxes derives from statute and arises upon [her] nonpayment of the taxes when due [and] is not contingent on any extrinsic event." *In re Alt,* 251 B.R. 831, 835 (W.D.Mich. 2000)*(emphasis added)(citing In re Mazzeo,* 131 F.3d 295, 303 (2d Cir.1997). However, the SEC's equitable disgorgement claim, unlike the tax deficiency claim in *In re Alt*,

24

required a disgorgement order or agreement before the Debtor's duty to pay would be triggered or

any amount of disgorgement would be due.  The reason for this is that, unlike in *In re Alt*—where

a statute had already created a duty to pay the IRS, prepetition and without the need to resort to a

tribunal—the SEC's disgorgement claim was equitable in nature and depended completely on the

District Court's exercise of its judgment or discretion before the Debtor could be said to owe the

SEC anything.

At the petition date, the SEC's disgorgement claim was more analogous to the contingent

tort claim involved in *In re Hughes,* than to the statutory or contract claims involved in the cases

cited above.  *See In re Hughes,* 98 B.R. 784 (S.D. Ohio 1989).  Also, even though the SEC

correctly points out that the court in *In re Hughes* determined that the creditor's claim was

contingent because there had not been a finding of liability or damages, what the SEC fails to

realize is that as in *In re Hughes*, at the petition dater, the District Court had not found the Debtor

liable for any specific amount of disgorgement.

Therefore, as in *In re Hughes*, and unlike in the other cases referenced above, the SEC's

claim was contingent at the petition date because the Debtor's duty to pay had not been

established and still depended on the SEC's success in getting a disgorgement order or agreement.

**b.**   **Regardless of whether the court applies the "readily ascertainable" or the**
**"substantial dispute as to the debtor's liability and amount" standard, the SEC's claim was**
**unliquidated at the petition date.**

The SEC's claim was unliquidated at the petition date because: 1) the appropriateness of

the Debtor's personal and derivative liability were still contested issues of fact subject to a

substantial dispute and 2) the District Court had to exercise discretion in determining what

amount of equitable disgorgement, if any, was appropriate to impose on the Debtor personally or

as a control person.  *See Final Pretrial Order, Docket No. ...p. 20-21;* 15 U.S.C. § 78u(d)(5)

In *In re Pearson*, the court stated that "a debt cannot be certain to the extent there is a bona fide dispute as to its amount or as to the underlying liability of the debtor to pay the debt. *In re Pearson,* 773 F.2d 751, 755 (6th Cir. 1985) *(citation omitted).* In that case the Sixth Circuit upheld the lower court's holding that the debt in that case was unliquidated because "while the amount owed by the Pearsons to Comprehensive was probably established as $127,000 by the arbitration proceedings, it by no means indicate[d] that the debt was unsecured to that extent or that the Pearsons would be ultimately held liable for that amount." *Id.* at 758. Similarly, although the Code does not define the term liquidated, the Eleventh Circuit, in *In re Verdunn—*a case cited by the SEC—stated that "A liquidated debt is that which has been made certain as to amount due by agreement of the Parties or by operation of law… [However], if the amount of the debt is dependent…upon future exercise of discretion, not restricted by specific criteria, the claim is unliquidated. *U.S. v. Verdunn*, 89 F.3d 799, 802 (11th Cir.1996).

First, as in *In re Pearson,* the SEC's equitable disgorgement claim was unliquidated at the petition date because both the Debtor's personal and derivative monetary liability to the SEC, and the appropriate amount of said potential liability, were subject to a substantial dispute. *See In re Pearson,* 773 F.2d 751, 755 (6th Cir. 1985). Much like the arbitrator's order in *In re Pearson*, the District Court's September 27 Opinion and Order by no means established whether the Debtor was liable for any specific amount of equitable disgorgement, much less that he would ultimately be held jointly and severally liable for all the potential disgorgement against Continental and Scioto. In fact, the remedies section of the District Court's Final Pretrial Order clearly demonstrates that the amount of the Debtor's personal and derivative liability for disgorgement, if any, was still a contested issue of fact. *Docket No. 43, p. 20—21.* The SEC cannot simply brush away the substantial dispute created by the fact that awarding the SEC's entire requested disgorgement against the Debtor would destroy the investors' equity in Continental and Scioto or

26

that the investors consider the Debtor essential to the success of the business plan they bargained for. *See Investor Affidavits, Ex. 1.* The fact that the District Court and the Parties believed that there was a substantial dispute as to the appropriateness of awarding the SEC's entire requested disgorgement is the reason the District Court did not simply award the SEC's requested disgorgement in its Opinion and Order on Summary Judgment, *Docket No. 24, Ex. E, p. 21*, but instead scheduled the evidentiary hearing on remedies.

Second, as stated in *In re Verdunn,* the SEC's claim was not readily ascertainable at the petition date because the appropriate amount of disgorgement to impose on the Debtor depended on the District Court's exercise of equitable discretion, unrestrained by any specific criteria. The undeniable fact is that, had the Parties not stipulated post petition and simply allowed the District Court to determine what amount of disgorgement, if any, was appropriate or necessary for the benefit of the investors, the District Court remained free to determine that the need to award the SEC's entire requested disgorgement against the Debtor was outweighed by the injury it would cause to the investors. (See section 1 on District Court's discretion). Hence, the amount of the SEC's equitable disgorgement claim could not have been readily ascertainable at the petition date because the District Court itself, even after having the SEC's request before it for months, decided that an evidentiary hearing on remedies was necessary to determine what amount of disgorgement, if any, was necessary or appropriate.

Therefore, the SEC's claim against the Debtor was unliquidated at the petition date because it was subject to a substantial dispute as to liability and amount, and because its discretionary nature rendered its amount not readily ascertainable.

**c. The Debtor's good faith cannot be called into question simply because he listed the amount of SEC's claim as unknown when, at that time, the amount of the Debtor's personal and derivative liability for the SEC's requested disgorgement was still a contested**

**issue of fact subject to the District Court's broad equitable discretion or the consent of the Parties.**

The Debtor listed the amount the SEC's claims as soon as the amount of his monetary liability to the SEC became known; as such, the Debtor's good faith in scheduling the SEC's claims cannot be called into question. The rule adopted by the Sixth Circuit in *In re Pearson* was that a court should rely primarily upon the Debtor's schedules checking only to see if the schedules were made in good faith on the theory that section 109(e) considers debts as they exist at the time of filing, not after a hearing. *In re Pearson,* 773 F.2d 751 (6th Cir. 1985)

At the time of filing, the exact amount of the Debtor's personal and derivative monetary liability for the SEC's requested disgorgement was still a contested issue of fact and completely dependant on the District Court's exercise of equitable discretion or the consent of the Parties. This is why the District Court scheduled the evidentiary hearing on remedies and is why the Debtor scheduled the SEC's claim as unliquidated, contingent and unknown as to amount.

The fact that in the District Court's December 2, 2005 Final Pretrial Order, *Docket No. 43, p. 21—22,* the SEC requested that the Debtor be either held jointly and severally liable for the entire $2,095,517.93 raised, or in the alternative—if the District Court denied that request—that the Debtor be held liable for the amounts that he received personally, is evidence that the exact amount of the Debtor's monetary liability to the SEC was still a contested issue of fact and unknown when the Debtor filled out his schedules.

Further, the mere fact that the Debtor knew that the SEC was seeking a disgorgement order against him for the maximum amount of disgorgement that the District Court could possibly award against all the defendants, did not establish that this was the amount of the SEC's claim against the Debtor. In fact, by seeking a disgorgement order for the entire $2,095,517.93 raised in both stock offerings the SEC, at most, established the outer limits of the District Court's

discretion, but did not establish the specific amount that the District Court would deem appropriate or necessary to impose on the Debtor.

Therefore, by listing the amount of the SEC's claim as soon as the amount of his monetary liability to the SEC became known, the Debtor clearly acted in good faith.

## <u>Conclusion</u>

WHERFORE the SEC's Motion to Dismiss the Debtor's Chapter 13 Case should be overruled because as stated above and in the Debtor's Response, the SEC's monetary claims were non-contingent, unliquidated and unknown as to amount on the Debtor's petition date.

Respectfully submitted,

*KOFFEL & JUMP*

            /s/ W. Mark Jump
W. Mark Jump  (0062837)
Attorney for Debtor
2130 Arlington Avenue
Columbus, OH 43221
(614) 481-4480

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
<u>**EASTERN DIVISION**</u>

| | | |
|---|---|---|
| In re: | : | Case No.  05-74493 |
| Bradley T. Smith, | : | Chapter 13 |
| Debtor. | : | Judge John E. Hoffman Jr. |

<u>**NOTICE AND CERTIFICATE OF SERVICE**</u>

Notice is hereby given that on this 15th day of June, 2006 the Debtor filed a copy of this Brief with the Court. The undersigned certifies that a copy of the Debtor's Brief was served by ordinary mail and/or electronically this date on the Parties whose names and full addresses are listed below.

DATE:_____June 15, 2006_____          _____/s/ W. Mark Jump_____
                                                               W. Mark Jump  (0062837)
                                                                Attorney for Debtor
                                                               2130 Arlington Avenue
                                                               Columbus, OH 43221
                                                               (614) 481-4480

SERVED:

Frank M. Pees, Trustee
130 E. Wilson Bridge Rd.
Suite 200
Columbus, Ohio 43085

Office of the U.S. Trustee
170 N. High Street
Suite 200
Columbus, Ohio 43215

Bradley T. Smith
26 Nottingham Rd.
Columbus, OH 43214

Sonia A. Chae
U.S. Securities and Exchange Commission
175 W. Jackson Blvd. Suite 900
Chicago IL. 60604

30